Your Honor, second case of the morning, call 211-0082, People of the State of Illinois v. Bogoslav Czapla, on behalf of the Appalachian, Ms. Barbara Passion, on behalf of the People, Mr. Marshall Stevens. Are both sides ready to proceed? Counsel, you may proceed when you're ready. Good morning, Your Honors, Counsel. My name's Barbara Passion. I represent Mr. Bogoslav Czapla because a lot of people in this case have extremely ethnic names. They also have American nicknames, so I'm going to stick with the American nicknames. My client is Bob. How much did the white socks have to do with this case? That was never really clear. Apparently, the Steeles were wearing white socks jerseys. But who said what, that didn't really... But the other part of the group were Cubs fans and part was white socks fans, and that's what apparently started the argument. I guess so, yeah. You know, they didn't... They were drinking all day long. They were Cubs fans. Yes, so I don't think it made... I think fighting was going to happen no matter what people were wearing or who they rooted for. Now, withstanding that fact, Jerry's statement, it was Bob, it was Bob. Can I ask you a threshold question? Sure. Reflexingly, as I read the briefs. How is this a Bruton issue? This seems to me to be a classic Crawford issue. Bruton involved a co-defendant who's tried jointly with the defendant where a confession was admitted. We don't have that here, and this is not a confession. It's anything but. You've got Jerry, the name of Jerry, was a person who is making an exculpatory statement blaming only the defendant for the attack. How is this a Bruton problem? Well, Jerry's a co-defendant, and he is making... He didn't testify like in Bruton, and he made a statement that accuses the defendant. Was he tried jointly in this case? He wasn't tried with the defendant. I'm sorry? He wasn't tried with the defendant, was he? No, he wasn't, and I don't think Bruton requires that there be a joint trial. Yes, Bruton was a joint trial, but I don't think the rule of Bruton says it has to be in a joint trial situation. I think the point in Bruton is that you'd be a co-indictee, a co-defendant who makes an out-of-court statement that accuses his co-defendant. Well, if that were the case, then co-conspirator statements are gone now and forever. No, not necessarily. A co-defendant might testify. A co-defendant's statement might be subject to cross-examination. I'm talking about exceptions to the hearsay rule. In Bruton, the United States Supreme Court said they emphasized that, footnote 3, we emphasize that hearsay statements inculcating petitioner was clearly inadmissible against him under traditional rules of evidence. There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned, and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause. And in this case, there is an exception, an excited utterance. Oh, I disagree with that, Your Honor. This was not an excited utterance. An excited utterance requires an unreflecting statement that's made in reaction to a startling event. This was not an unreflecting statement. There was a lot of confusion going on in that garage at the time. People were yelling. But one thing we do know is that the first person that Bobby, who is the complaining witness, named was Jerry and not my client. So in all of this confusion, he's saying it's Jerry who hurt me, and Jerry's saying it was Bob. So even though only not much time passed, that's certainly true, and that's a factor that's considered when you're talking about an excited utterance. But that's not a deciding factor. And in this situation, even though things were happening quickly and the statement was made soon after the event, it was definitely a reflected statement where he considered that he was in trouble and he deflected the blame onto Bob. Before I get into that, I think what you're saying has some appeal to it. But I mean, I suppose to reconcile what we're talking about, I don't see this as a classic Bruton problem at all. However, Crawford, I think you can arguably say, is consistent with Bruton in the sense that you have a testimonial statement that would come in without cross-examination. So you end up in the same place, whether we call it Bruton or Crawford. You have a statement coming in that's testimonial without the opportunity for cross-examination. So we're going to get to the same issue anyway, but I think it's more of a Crawford. I don't think you need to get into Bruton. You could frame this as strictly a Crawford issue and end up in the same place. Well, you could except for one thing, Your Honor. The Crawford case is about Sixth Amendment confrontation, and this case and Bruton are about due process. So you really aren't claiming relief under the same constitutional rights in Bruton as you are when you're talking about Crawford. Talk about the states. What about the argument that this issue is waived? It's forfeited. Well, this issue was forfeited. Yes. But we're asking that it be considered under plain error because this situation meets the requirements of the second prong of a plain error rule that it affected substantial rights. This court in Filiaw and Parker found that a Bruton violation satisfies the second prong of a plain error rule, so we're clearly in plain error territory. It can. Yes, it can. It can be considered. As in Filiaw, where they did say it was reversible error, many of the facts are completely the same. The statement was repeatedly called to the jury's attention in the state's case in chief. That happened in our case. It was argued as substantive evidence of the defendant's guilt in the state's opening clause and rebuttal clause in our case. In Filiaw, were there other statements by the defendant, as there were in this case? Admissions by the defendant? There were no admissions by my client. By your client? No. What about your client's statement to Deanna that when you're fighting, you just can't control yourself? Sometimes you just can't stop. Oh, I thought you meant a confession to the police. No. Yeah. A confession doesn't have to just be to the police. You're right about that, yeah. I don't remember if there was such a statement in Filiaw. However, there are other. I think the most important thing here is its use of substantive evidence in the state's closing. This prosecutor said this is proof beyond a reasonable doubt. He didn't rely too much on any of his other evidence. He just kept pounding on the fact that Jerry said it was Bob, it was Bob. That was the main thrust of the state's entire case. But I'm not finished. Also, like in Filiaw, the recording was replayed several times. It was replayed at the end of the closing arguments, and then it was sent to the jury during deliberations. So in terms of having a fact situation that is like Filiaw enough to satisfy the second prong of the plein air rule, we definitely have that here. Do you always have that in a Crawford violation? Excuse me? Do you always have the plein air rule invoked in a Crawford violation? Automatically it falls under the second prong? I don't know. I didn't research the Crawford rules because I don't think this is a Crawford case, Your Honor. I know we disagree about that fact. However. We do. Well, is it always plein air and under Bruton? Is that your position? Yes. So for that reason, we ask that this court reverse the conviction and remand for a new trial. Thank you. Good morning once again, Your Honors. I'm doing double duty here. Before I proceed, I want to point out this is not my case. This is prepared by a student from the University of Illinois under the supervision of Professor Canis. But nevertheless, you're intimately familiar with the facts and evidence. I'm sorry? But nevertheless, you're intimately familiar with the facts and evidence, right? I have to tell the truth in court. This is being recorded. And please be gentle. As to whether or not this is a Bruton violation, no, it's not. Why is it a Bruton violation? Suppose the counsel is adamant that it's a Bruton case. Well, because we're trying together and mainly because it's not exactly an admission. I don't believe. Your point about Crawford is well taken. It is an out-of-court statement. And this would arguably be violative of Crawford sitting aside Bruton for the moment. Again, I agree with you. There's no joint trial. There's no confession. Blaming somebody else is anything but a confession. It doesn't line up with Bruton. But her point, you'd still end up in the same place, would you not?  I'm right. I think that's going to be the issue, whether it's an excited utterance and whether it's waived. As to whether it's an excited utterance, I can't add much to the law of excited utterance. That's going to be a value judgment that your honors have to make. Well, it's a value judgment that the trial court number made because there was no objection to the hearsay. There's a very strong forfeiture argument to be made here. How do you respond to the argument that the state has forfeited the argument that it's an excited utterance because you didn't make that argument in the trial court? Well, you know, it's funny you mention that this morning. I got to work very early, and I was trying to find cases on that. It's always been my understanding if you win below, you know, you get the benefit of that win. If you win below, you can argue anything in the record that supports the correct record. Right, which I did find a case that, you know, ultimately it's going to be the court's decision. You know, there's old law. People v. York, you know, Supreme Court case, and People v. Finland, this court's old cases. So, yeah, I don't think that that works. Also, let me ask you this. Can defendants who are involved in the activity that produces the, quote, unquote, spontaneous event or the startling event, can they also make excited utterances having been a participant in the very circumstances that create the exciting event? Well, I think that would be, you know, from my understanding of the evidence, that was just back talk that was apparent on the 9-11 tape. So, yes, everyone was, you know, shouting out, you know, their very excited, very drunken, apparently, utterances at the time. So they're not, quote, unquote, speaking to the police. They're just shouting out what had just occurred. Right. Yeah. There are many cases. Here's what's troubling, that a spontaneous excited utterance can be the situation where the person allegedly making the excited utterance is blaming somebody else for a crime. Mm-hmm. I mean, that's usually, because you talk about, you know, an unreflecting statement. Yeah. Because it's not like it's unreflecting when you're trying to put the, shift the blame to somebody else in a crime that you've allegedly just participated in. That's a consideration. I don't deny it. And, again, that's going to have to go into the weighing process. To cut to the chase here, let's assume, for the sake of the argument, we don't think this is an excited utterance. Mm-hmm. You've got the second prong here, which states, a clear and obvious error occurred. And the error is so serious that it affected the fairness of the defendant's trial, regardless of the closeness of the evidence. Because it would seem to me, it would seem to me that on accountability here, they're all accountable. Right. The defendant, even if he didn't strike a fatal blow, doesn't escape accountability. So I think in the closely balanced test, arguably, he would lose. What about her argument is, forget about the first prong. The second prong is, a clear and obvious error occurred. The error is so serious. She says there's cases, say, of brutal, if she puts a violation, meets the test automatically, regardless of the closeness of the evidence. Are you able to respond to that argument? Yeah. That was another thing I was looking at. Essentially, I thought what the defendant was arguing is that, forget it. If it's brutal, stop. We don't care about the closeness of the evidence. That's her argument. What about it? We cited in our case, cases that said that a brutal or, I assume, a champ. Crawford. Crawford, excuse me. Violation can be harmless error. I looked up. It can be? Yes. It can be a harmless error. So, therefore, you go to a weighing of both. Essentially, I would say no, it's not necessarily an automatic reversal. So we would be finding that it is not a substantial right? Yes. And if you look at the other prong, I think that brief does make the point that, especially if you throw in accountability, that this was a group beating and definitely Mr. Steele lost an eye as a result of it. But doesn't it really go to the first prong? Yes. The first prong talks about the closeness of the evidence. Correct. In fact, their state has a strong argument on accountability theory, but she's focusing in on the second prong. Jerry did not testify, but he was available. He had already pled guilty. Why didn't the state just call Jerry? I have no idea. Do you know what Jerry was sentenced to? No. I just don't recall. If that was in the evidence that was available. This doesn't get back to the point. I mean, I don't know exactly how this fits into the analysis of plain error, but there's really no – I don't think that there's any question that if this was sent back for retrial and you remedied this 9-11 issue, they'd still – the evidence is certainly – strong enough that I don't think that there's any doubt that it would be the same result. But that isn't an analysis we get into now, because if there's error, we don't say, well, they end up in the same place anyway. I don't think that's a proper perspective. On the 9-11 tape, Bob not only did he say – or Jerry said it was Bob. He also said, and I think this is in your brief, I told you to effing stop. So it wasn't just that Bob did it. He's conversing and saying, I told you to effing stop. I recall seeing that. So it was not just that isolated statement that it was Bob, as if he was just pointing at Bob. Correct? That, again, I didn't bring the record.  Any further questions? One question. You indicated that the briefs here were prepared by a student under the supervision of a professor? Yes. And not under the supervision of anyone in your office? Well, I reviewed it, and – That's not the question. I'm sorry? Was it supervised by anyone in your office? You mean as far as the student? No, I don't think so. I don't know the details of this program. So the brief was filed by your office without any independent review? I reviewed it. I just asked you that. Yes. Did you or did you not review these briefs before they were filed? Yes, I did. And you did that without looking at the record. Is that correct? That's correct. Okay. Thank you. I didn't feel that the record was necessary given the, you know, the issues that were raised. Okay. Thank you. Very good. Thanks. Do you wish to offer a reply? First of all, although this issue wasn't argued much below, it was one of the allegations in the post-trial motion. So had the state, the state now says that its theory is that it was an excited utterance. Had that been true, the state could have said so at the post-trial motion, but it didn't. But the fact that it didn't, does that preclude us from affirming on that basis? Oh, absolutely not. I'm just saying I don't want an assumption to be made that the state never had the opportunity to address the question. Back to the second problem. In Philly, what happened was this court said when an issue is forfeited, you look to the plain error rule. When it's not forfeited, you do a harmless error analysis. Because this was forfeited, you look at a plain error analysis. And the plain error analysis that they did, you did, led this court to conclude that under the facts of Philly on Parker, the second problem had been met. Therefore, there was a serious violation. In Philly, it was a post-arrest statement as well, correct? I can't remember. I'm sorry, Your Honor. I don't remember. I believe it was. But all of these cases, the Bruton cases and Bruton progeny, all involve post-arrest statements or confessions. This would be a different, this would be an extension of Bruton to apply it to this set of facts. Would you agree? I hesitate to agree because I did so much research and I'm not sure that I haven't run into any cases. Tell me a case where Bruton has been involved in it. It's a statement to another party, not a statement to the police. All I can tell you is that when I was researching, I received the impression, and I looked at a lot of cases, that the limitations weren't whether they were tried together. There were a lot of things that one assumes Bruton is about that subsequent case law didn't support. But I cannot tell you in detail. I understand your concerns because they are legitimate concerns. It's a due process argument. However, one of the concerns about in Bruton and expressed by the Supreme Court of the United States is the inherent distrust of finger-pointing by people who are in custody and making statements implicating another person. That concern is not evident here. It's not clear from this record whether Jerry even knew who Deanna was talking to. Is it clear? I'll have to say that I disagree with you on that. I think Jerry knew very well that he was in trouble. Well, when you say you think it, point out in the record the facts that support that notion, that he knew she was talking to a 9-1-1 operator or the police. The other guy did it. Why would that be your first reaction? Again, you're using the statement itself to bolster your claim. You claim that he was, quote, unquote, finger-pointing. And you leave out the other thing that he said, which is, I told you to effing stop. But we don't know who he was talking to. Everyone's assuming he was talking to Bob. But there was a Michael there. The point is it wasn't just finger-pointing. It was more of a statement about what had just occurred. Well, even though I told you to stop, it wasn't me. It was you. I told you to stop. What element of an excited utterance is missing here? The unreflecting statement. Definitely. Because he was involved, it can't be a reflecting statement, unreflecting statement? No, it's more because of what he said and the timing of what he said. You have people coming in and seeing Jerry all bloody, and what happened? Well, Jerry, excuse me, not Jerry, Bobby, is all bloody. The people come in, what happened? He says, Jerry hurt me, Jerry hurt me. And Jerry said, no, it was him. So, sure, a lot of time didn't pass, but he had time to consider that, uh-oh, I'm in trouble. I need to lay this off on someone else. There are cases where 18 minutes have passed and still could be an excited utterance, 20 minutes passed. Right. I think, yes. So in this case, it's not 18 minutes. It's not, we don't even know if it's even a minute. It's a very short period of time. And he actually runs into the home first, and the testimony was that he was nervous and frantic immediately before he made that statement that was picked up on him. But he didn't say it was Jerry then when he ran into the house. I mean, you're absolutely right that there's not much time left. about what had just occurred. Yeah. So. Yes. Okay. One last thing, if I may. Sure. Oh, no, I said it already. Okay. Thank you very much. Thank you. All right, thank you very much. We'll be in recess until 10.30.